**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT M. FORSTER, | CASE NO. 3:13-cv-02699-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 11, 12, 17, 18, 20, 22 |

## MEMORANDUM

### I.     Procedural Background

On January 18, 2011, Scott M. Forster ("Plaintiff") protectively filed an application as a claimant for disability insurance benefits, with an alleged disability onset of December 19, 2010.  (Administrative Transcript, hereinafter, "Tr." at 16, 56, 120).  After Plaintiff's claim was denied at the initial level of administrative review, at Plaintiff's request, on September 18, 2012, an administrative law judge ("ALJ") held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert ("VE") appeared and testified.  (Tr. 31-55).  On September 26, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits.

(Tr. 13-30).  On November 21, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 10-12), which the Appeals Council denied on September 4, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 4-9).

On November 4, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits.  Doc. 1.  On February 12, 2014, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  Doc. 11, 12.  On May 28, 2014, Plaintiff filed a brief in support of the appeal ("Pl. Brief").  Doc. 17.  On June 23, 2014, Defendant filed a brief in response ("Def. Brief").  Doc. 18.  On November 11, 2014, the Court referred this case to the undersigned Magistrate Judge.  Both parties consented to the referral of this case to the undersigned Magistrate Judge, and an order referring the case to the undersigned Magistrate Judge was entered on December 1, 2014.  Doc. 20, 22.

## II. Relevant Facts in the Record

Plaintiff was born January 21, 1978 and thus was classified by the regulations as a younger person through the date of the ALJ decision on September

26, 2012.  (Tr. 34); 20 C.F.R. § 404.1563(c).  Plaintiff has a high school degree

with some college.  (Tr. Pg. 34).  He attempted to enter the military but did not

complete his training and was separated from the military before completing basic

training.  Plaintiff has past relevant work as a pizza delivery person, cashier and

sales attendant (Tr. 50) and he was working part-time delivering pizzas at the time

of the hearing.  (Tr. 35).  Among other conditions, Plaintiff has been diagnosed

with Asperger's Developmental Disorder and Attention Deficit Hyperactivity.  Pl.

Brief at 2.  Plaintiff's mother, reported that Plaintiff lives alone in a condominium

and she spends time with Plaintiff shopping, going out to eat, going with him to

counseling appointments, and assisting him with paying bills and making home

and car repairs.  (Tr. 175).

## A. Relevant Treatment History and Medical Opinions

### 1.  Thomas Bowers, Ph.D., Psychological Evaluation, May 17, 2011

Dr. Bowers performed a mental status evaluation on Plaintiff.  (Tr. 319).

Upon examination, Plaintiff's speech was distant and aloof, his behavior was

slightly eccentric and odd, and he complained of poor sleep.  (Tr. 320).  Dr.

Bowers reported that Plaintiff's IQ was in the average range, his verbal

comprehension was in the superior range, and his perceptual reasoning and

working memory abilities were average. (Tr. 320-21). Although he exhibited some impulse control difficulties, his insight was "quite good," and his social judgment was reasonable. (Tr. 321). Dr. Bowers diagnosed Plaintiff with Asperger's Disorder and assigned him a Global assessment of Functioning (GAF) score of 60.[1] (Tr. 322). He opined that Plaintiff's outlook was good (Tr. 322), and further concluded that although Plaintiff had moderate restrictions on his ability to interact appropriately with the public, he had only slight restrictions on his abilities to interact with co-workers and supervisors. (Tr. 326).

///

///

[1] *Schwartz v. Colvin*, 3:12-CV-01070, 2014 WL 257846 at *5, n. 15 (M.D. Pa. Jan. 23, 2014) ("The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed.1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. *Id.* The score is useful in planning treatment and predicting outcomes. *Id.* The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two. . . . . A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. *Id.* A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.*").

### 2. Michael Suminski, Ph.D., Psychological Consultation, May 31, 2011

Dr. Suminski, reviewed Plaintiff's medical records and made a residual functional capacity (RFC) assessment.  (Tr. 60-61).  Dr. Suminski observed that Plaintiff did not have limitations in his understanding, memory, sustained concentration, or persistence.  (Tr. 60).  With regard to social limitations, Dr. Suminski noted that Plaintiff was moderately limited in ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 60-61).  Dr. Suminski further opined that Plaintiff was not significantly limited in his ability to ask simple questions or request assistance or maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 60-61).  Plaintiff was also capable of engaging with others socially.  (Tr. 61).  Dr. Suminski concluded that Plaintiff's statements were only partially credible, and he was capable of at least simple, routine work, and probably more.  (Tr. 61).

///

///

///

### 3.  Pon Lion Tsou, M.D., Psychiatric Evaluation, July 18, 2011

In the July 2011 evaluation report, Dr. Tsou diagnosed Plaintiff with Asperger's Disorder, nicotine dependence, anxiety disorder, and depressive disorder with a current GAF score of 55.  (Tr. 337-38).

### 4.  Pennsylvania Counseling Services: Curt Byers, Counselor

Mr. Byers treated Plaintiff for Asperger's Disorder since December 2009 in twice-monthly sessions.  (Tr. 382).  In a letter dated September 17, 2011, Mr. Byers wrote that he was not a licensed psychologist and had "no unique training or qualifications for assessment of capability for employment." (Tr. 382).  Mr. Byers noted that Plaintiff has held multiple jobs for periods in excess of six months, and Plaintiff has improved in his conflict management and conflict avoidance skills. (Tr. 382-83).  Mr. Byers opined that Plaintiff's success may be dependent on his continued counseling sessions.  (Tr. 383).

According to Mr. Byers, although a typical person with Plaintiff's diagnosis would likely have a proclivity for road rage and other associated aggressive driving, Plaintiff has a relatively clean driving record.  (Tr. 383).  Mr. Byers noted that he had to repetitively review the Plaintiff's problems with him in order for Plaintiff to control his anger and that it took a great deal of attention and emotional

energy on Plaintiff's part to consistently employ anger management and conflict skills in his job as a delivery driver.  (Tr. 383).  Mr. Byers noted that Plaintiff's "ability and willingness to seek and gain employment, and even keep it for significant lengths of time evidently places him at the higher end spectrum of ability and employability of people with his diagnosis."  (Tr. 383).

Mr. Byers also stated that Plaintiff's work history may not be truly indicative of his ability to remain permanently employed considering his track record of conflict based dismissals.   (Tr. 383-84).   Mr. Byers opined that he believed Plaintiff's current work schedule was at the limit of Plaintiff's ability due to his interactions with co-workers, supervisors, and customers, but that improvement in handling his symptoms could be maintained with continued counseling.  (Tr. 384).

### 5.  Plaintiff's Testimony

Plaintiff testified that, in addition to some college, he also had vocational training in automotive repair.  (Tr. 34).  At the time of the hearing, Plaintiff was working part-time at a pizza shop delivering food, working in the shop answering phones, and performing other tasks.  (Tr. 35, 41-42).  Plaintiff had worked at the pizza shop for the prior eighteen months, and he typically works 20-25 hours per week, although sometimes he works up to 30 hours per week.  (Tr. 38, 41).

Plaintiff testified that he had numerous jobs that he quit because he felt he could not handle a full-time schedule. (Tr. 40). Plaintiff testified that although he was fired from the pizza delivery position six years prior, he was offered to return to the position when he happened to be in the restaurant at the time when the current driver did not arrive on time for work. (Tr. 38). Plaintiff testified he was usually overwhelmed at his prior attempts at other jobs. (Tr. 40). He testified he was okay with his current job delivering pizzas unless the shop was busy and then he would have to answer the phones, take orders, fold boxes and do prep work in the kitchen. (Tr. 41).

Plaintiff testified to multiple incidents where he argued with customers and customers complained about him being rude. (Tr. 42). At least once a week Plaintiff had to call his mother while driving because he was frustrated. (Tr. 42). His mother would spend thirty minutes at a time talking to Plaintiff to calm him down. (Tr. 42-43). If Plaintiff couldn't call his mother at these times, he thought he probably would have a breakdown. (Tr. 43). Plaintiff speculated that if had a job working alone, he thought he would still be frustrated, his mind would wander, and he would be distracted. (Tr. 43). Plaintiff testified that he could focus for

about an hour at a time. (Tr. 44). However, he clarified that he can focus longer when performing tasks that he enjoys, such as playing video games. (Tr. 48).

In Plaintiff's function report, he stated that his normal daily activities include illustrating on his computer for a "few hours," going grocery shopping when necessary and running other errands, playing video games, and car maintenance. (Tr. 187-88). According to Plaintiff, he cares for his pet cat, and has no problem taking care of his personal needs. (Tr. 189). He reported that he does not need reminders to take care of his needs, he prepares his own meals daily, he performs light house maintenance, and does laundry. (Tr. 190). He reported that he goes outside daily, is able to drive a car, shops in stores, and engages in his hobbies of video games, cars, comic book illustrations, and reading on a daily basis. (Tr. 191-92). Plaintiff spends time with others in internet forums, out at restaurants, in bars, and in casinos. (Tr. 192). According to Plaintiff, he has always had difficulty making and keeping friends and getting along with authority figures. (Tr. 193).

### 6. Functional Report by Linda Forster, Plaintiff's Mother

Although Plaintiff lives alone in a condominium and Ms. Forster reports seeing him a couple times a week, Ms. Forster reports how Plaintiff spends his

time.  (Tr. 175).  Ms. Forster reported that Plaintiff sleeps a lot, plays video games, uses a computer, and cares for a cat independently.  (Tr. 175-76).  She stated that Plaintiff has difficulty getting along with others, has difficulty sleeping, and although he needs reminders to do his laundry, he can otherwise take care of his personal needs such as bathing and dressing.  (Tr. 176).  Ms. Forster reported that Plaintiff can go out alone, drive a car, shop in stores, count change, and handle a savings account.  (Tr. 178).  According to Ms. Forster, Plaintiff "always has trouble making/sustaining friends; does not like being in groups; says inappropriate things; fights with some neighbors at old residence."  (Tr. 180).  She also stated that Plaintiff can only pay attention for four to five minutes at a time, but he adequately follows written instructions.  (Tr. 180).  Ms. Forster reported that Plaintiff has been fired multiple times from "at least 30 to 35 jobs" due to problems getting along with others.  (Tr. 180-181). When asked to describe any changes in social activities since the illness or condition began, Ms. Forster responded, "Always been this way."  (Tr. 180-181).

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. 20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. 20 C.F.R. § 404.1520(a)(4). The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from

doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean

a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance.  *Jones*, 364 F.3d at 503.  If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A. Credibility Determination of Plaintiff

Plaintiff contends that the ALJ erred by "failing to reconcile the Plaintiff's inability to perform his past relevant work as a delivery driver on a full time basis with the finding that the Plaintiff was not credible in his testimony as to his problems functioning as a delivery driver."  Pl. Brief at 9.  Plaintiff argues that there is an "inconsistency between the Plaintiff's inability to perform his past relevant work as a delivery driver and his ongoing work as a delivery driver" and

that the ALJ must reconcile the inconsistency with the finding that Plaintiff's

ability to maintain his part-time job for eighteen months showed improved conflict

management.   Pl. Brief at 10.   Plaintiff further asserts that "he has received an

extraordinary amount of accommodation from his present employer . . . including

the employer rehiring . . . Plaintiff after . . . a previous unsuccessful term . . .which

ended with . . . Plaintiff being fired (Tr. Pg. 38)."   Pl. brief at 10-11.

 With regards to Plaintiff's credibility, the ALJ found that:

> [Plaintiff's] statements concerning the intensity, persistence, and
> limiting effects of his symptoms are not fully credible. While
> [Plaintiff] takes daytimes naps when he is bored, he does not report to
> have difficulty with drowsiness when driving (Exhibit 8F). He claims
> to have severe concentration problems, but he has no concentration
> problems "on things he likes" (Exhibit F; Testimony). He is able to
> drive for his pizza delivery job as well as drive into the mountains for
> enjoyment (Exhibit F). He is able to work on cars, play video games,
> and work on comic illustrations and art projects on the computer
> (Exhibit 7E; Testimony). These activities suggest a greater degree of
> concentration than alleged. Regarding social functioning, [Plaintiff]
> alleges having difficulty dealing with others including coworkers and
> customers (Testimony). Despite this alleged difficulty, [Plaintiff] has
> been able to maintain working for the same employer continuously
> since March 2011 (Exhibit 8D), which suggests a greater degree of
> social functioning than alleged.

(Tr. 22).

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); accord *Snedeker v. Comm'r of Soc. Sec.*, 244 F. App'x 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. SSR 96-7p; *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. SSR 96-7p. In determining a claimant's credibility regarding the severity of symptoms, the ALJ must consider the following factors in totality: (1) the extent of daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication for the symptoms; (6) measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions

due to pain or other symptoms.   SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929;

accord *Canales v. Barnhart*, 308 F. Supp. 2d 523, 527 (E.D. Pa. 2004).

In this instance the ALJ detailed reasons for rejecting Plaintiff's testimony

regarding the severity of Plaintiff's symptoms.   (Tr. 22).   The ALJ noting that

Plaintiff's report of drowsiness corresponds to when he is bored, Plaintiff's report

of concentration problems depends on the degree to which he is interested in the

activity, such as playing video games or illustrating, and Plaintiff is able to drive a

car for a part-time pizza delivery job as well as drive to the mountains for leisure.

(Tr. 22).   The ALJ also noted that with regard to Plaintiff's social functioning,

Plaintiff is able to maintain the same employer for his part-time work since March

2011.  (Tr. 22).   The ALJ's credibility determination of Plaintiff is supported by

substantial evidence.

With regards to Plaintiff's assertion that it was incompatible to conclude that

Plaintiff was unable to perform his past relevant work as a delivery driver on a full

time basis while at the same time finding that Plaintiff's part-time work

demonstrates improved conflict management ability, the Court finds that the ALJ

did not err.  Under 20 C.F.R. §§ 404.1571, 416.971, "a claimant's ability to work

on a part-time basis may constitute probative evidence of his or her ability to

perform the duties of a full-time job." *Henderson v. Astrue*, No. CIV.A. 10-1638, 2011 WL 6056896, at *6 (W.D. Pa. Dec. 6, 2011); *see also Lyons v. Heckler*, 638 F. Supp. 706, 711 (E.D. Pa. 1986) ("If a claimant performs work during any period in which she alleges that she was disabled, the work performed may demonstrate that she is able to engage in substantial gainful activity"); *Lauer v. Bowen*, 818 F.2d 636, 641-43 (7th Cir. 1987) (J. Posner dissent) (explaining that past "insubstantial" work in combination with other evidence can support a conclusion that a claimant is not disabled).   Sections 404.1571 and 416.971 provide that "[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. §§ 404.1571, 416.971.   The ALJ did not err in concluding that Plaintiff's social abilities to interact with coworkers, customers, and manager during his part-time pizza delivery job was a factor to support that Plaintiff could work a full-time job that required less social interaction.

## B. Duty to Develop the Record

Plaintiff asserts that the above-mentioned "inconsistency," in the ALJ's determination that Plaintiff is unable to perform his current part-time position on a full-time basis, yet is able to perform a full-time job that requires less social

interaction, warrants a remand to require the ALJ to develop the record.  Pl. Brief

at 11.  According to Plaintiff:

> [T]he above inconsistencies require the Administrative Law Judge to
> recontact the treating sources as set forth in 20 CFR §404.1512(e).
> Under this regulation, the Administrative Law Judge is required to
> recontact the treating source "when the report from your medical
> source contains a conflict or ambiguity that must be resolved, the
> report does not contain all the necessary information or does not
> appear to be based on medically acceptable clinical and laboratory
> diagnostic techniques." The ambiguity here is the Administrative Law
> Judge finding that the Plaintiff was not able to do his past relevant
> work but at the same finding the Plaintiff showed improved conflict
> management at that job.

Pl. Brief at 11-12.  As mentioned above, "a claimant's ability to work on a part-

time basis may constitute probative evidence of his or her ability to perform the

duties of a full-time job."  *Henderson v. Astrue*, No. CIV.A. 10-1638, 2011 WL

6056896, at *6 (W.D. Pa. Dec. 6, 2011); *see also Lyons v. Heckler*, 638 F. Supp.

706, 711 (E.D. Pa. 1986) ("If a claimant performs work during any period in which

she alleges that she was disabled, the work performed may demonstrate that she is

able to engage in substantial gainful activity").   Given the Court's above

conclusion finding that no inconsistency exists, the ALJ is not required to

"recontact" medical sources and remand is not warranted.

///

**C. Weight Accorded to Opinions**

Plaintiff argues that "[t]he Administrative Law Judge gave little weight to the opinion of Curt Byers that the part time work the Plaintiff was doing delivering pizzas was the most work activity he could do or was even beyond his capabilities." Pl. Brief at 12. Plaintiff further asserts that the ALJ gave too much weight to Plaintiff's Global Assessment of Functioning (GAF) scores between 55-60, arguing that the GAF scale "was never intended to be a predictor of the ability to work but as rather an assessment of an individual's functioning at one point in time." Pl. Brief at 13-14.

"Medical opinions are statements from . . . *acceptable medical sources* that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . .symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added). Only licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a) & 416.913(a). Evidence from "other sources" that are not "acceptable

medical sources" and are not entitled controlling weight. *See* 20 C.F.R. §§ 404.1513(a) and (d)(1), 404.1527(a)(2), 416.913(a) and (d)(1), 416.927(a)(2); Social Security Ruling (SSR) 96-2p (rule for according controlling weight to "treating source medical opinions"); SSR 06-03p; *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999); *cf. Gomez v. Chater*,74 F.3d 967, 970-71 (9th Cir. 1996) (Opinions from "other sources" can be accorded "less weight than opinions from acceptable medical sources").

Physician assistants, licensed clinical social workers, and licensed professional counselors are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *Hartranft v. Apfel*, 181 F.3d 358, 361; *Hearn v. Colvin*, No. 3:13-CV-1229, 2014 WL 4793954, at *10-11 (M.D. Pa. Sept. 24, 2014). Nevertheless, opinions from other medical sources should be considered by the ALJ in its overall findings, specifically with respect to issues such as the severity of impairments and functional effects. *See* 20 C.F.R. 404.1527(b) and 416.927(b); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121-23 (3d Cir. 2000); SSR 06-03p ("The term 'medical sources' refers to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources'"). Although "other source" opinions can, under certain limited

circumstances, outweigh the opinion from a medical source, the ALJ need only consider evidence from such other sources with the available evidence as a whole. *See* 20 C.F.R. 404.1527(b) and 416.927(b); SSR 06-03p.

An ALJ may properly allocate greater weight to the consultative opinion of a non-examining physician who reviews a claimant's medical records than non-acceptable medical sources, provided that the ALJ adequately explains the grounds for this determination. *See e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir.1999); *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996).

In this instance, the ALJ accorded "significant weight" to: 1) the opinion of Dr. Bowers; 2) the GAF scores given by Dr. Bowers and Dr. Tsou; and, 3) the opinion of Dr. Suminski. (Tr. 22-23). For Mr. Byers' opinion, the ALJ accorded "little weight" explaining that Mr. Byers' opinion was:

> inconsistent with the clinical observations of no more than moderate difficulties, [Plaintiff's] improved coping abilities, the conservative and generally successful treatment, and [Plaintiff's] daily activities. Further, there is little medical evidence that [Plaintiff] could not work forty hours in an occupation with less interaction with others than his current pizza delivery driver job, namely no public interaction, occasional supervision, and occasional interaction with co-workers but no tandem tasks.

(Tr. 23).  The ALJ compared Mr. Byers' opinion with the opinions of Drs. Bowers, Tsou, and Suminski against the objective medical evidence, GAF scores, and Plaintiff's own testimony regarding his limitations.  That assessment led the ALJ to conclude that the opinions of Drs. Bowers, Tsou, and Suminski more aptly captured Plaintiff's residual functional capacity, an assessment which was supported by substantial evidence in the record.  Since the opinion of Mr. Byers was not entitled to controlling weight as a matter of law, and the ALJ's opinion adequately explained the grounds for affording greater weight to the medical sources and GAF scores encompassed within the opinions, remand is not warranted.  *See Hearn v. Colvin*, No. 3:13-CV-1229, 2014 WL 4793954, at *10-11 (M.D. Pa. Sept. 24, 2014).

Plaintiff argues that the ALJ erred in assigning too much weight to Plaintiff's GAF scores.  Pl. Brief at 13-14.  The Court finds that the ALJ properly addressed Plaintiff's GAF scores in totality with the remaining medical evidence of record, and the ALJ's allocation of weight to the opinion evidence is supported by substantial evidence.  Plaintiff is correct that GAF scores are not afforded any

unique status; rather the Court must look at the overall context.[2] *Sabina v. Comm'r of Soc. Sec.*, No. CIV.A. 13-934, 2014 WL 4925073, at *1 (W.D. Pa. Sept. 30, 2014).  Given that the ALJ accounted for the GAF scores in addition to evidence from medical source opinions, testimony, Plaintiff's activities of daily living, and the record as a whole, the ALJ did not place a disproportionate or dispositive weight to Plaintiff's GAF scores.  In this instance, the Court finds no error in the ALJ according the GAF scores, "significant weight."

## IV. Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence.   42 U.S.C. §§ 405(g), 1382c;

---

[2] The Court notes that "[d]ue to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual [of Mental Disorders] ("DSM–5")."  *Solock ex rel. F.A.R.P. v. Astrue*, No. 1:12-CV-1118, 2014 WL 2738632, at *6 (M.D. Pa. June 17, 2014) (citing Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders 5d,* 16 (2013)).  "It was recommended that the GAF be dropped from DSM–5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See* Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders, DSM–516 (5th ed. 2013).  In response, the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM-13066 at 5 (July 13, 2013).

*Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: April 10, 2015 _____s/Gerald B. Cohn_____

GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE